**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ERTC EXPRESS, LLC**,

Plaintiff / Counter-Defendant,

v. Case No. 8:26-cv-01125-WFJ-SPF

**T&M APPLIANCE & AIR, INC.**
**d/b/a T&M HEATING & AIR**,

Defendants / Counter-Claimant.
_______________________________________/

**ORDER**

Before the Court is Plaintiff and Counter-Defendant ERTC Express, LLC's ("Express") Motion to Dismiss or Alternatively to Compel Arbitration. Dkt. 19. Defendant and Counter-Claimant T&M Appliance & Air, Inc. ("T&M") has responded in opposition. Dkt. 26. After careful consideration, the Court denies Express' motion.

**BACKGROUND**

This dispute arises from a Client Engagement Agreement ("the Agreement") between the parties, with both parties claiming the other breached. Express is a consulting services provider that works to support clients' legal claims for Employee Retention Tax Credits ("ERTCs") from the U.S. Department of the Treasury. Dkt. 1-2 ¶ 6. T&M is a corporation "that provides heating, ventilation, and air conditioning services in southern and central Alabama." *Id.* ¶ 4.

On December 5, 2022, Express and T&M entered into the Agreement.[1] *Id.* ¶ 5. The Agreement authorized Express to "identify and calculate tax credits on behalf of [T&M] not claimed prior to the date of this Agreement[.]" *Id.* at 8. Express was then obligated to submit relevant forms to the Internal Revenue Service ("IRS") on T&M's behalf, so long as T&M provided necessary information and documents. *Id.* ¶ 7. The Agreement further provided that "Express shall have earned its Fees when it has presented to [T&M] the computation of ERTCs ensuing in this Agreement. [Express]'s work is complete upon final calculation of ERTC credit claim(s)." *Id.* at 9. The Agreement authorized "Express to prepare and submit through its affiliated companies to the IRS all paperwork, forms[,] and materials associated with ERTC benefits." *Id.* T&M was required to choose a payment method "within five (5) business days upon completion of work and notification of ERTC credits due." *Id.*

Additionally, the Agreement had an exclusivity clause that prohibited T&M from seeking representation elsewhere to obtain its ERTCs. *Id.* at 11. T&M agreed that if it terminated the business relationship "prior to completion of the procedures performed on the ERTC computation," Express would be owed 30% of the "ERTCs that are ultimately claimed by [T&M]." *Id.* at 12. On the other hand, "[i]f for any reason ERTC Funds are never collected by [T&M], then no fee will ever be due."

[1] Courts may consider "the four corners of a complaint and the complaint's attached exhibits when analyzing a Rule 12(b)(6) motion to dismiss." *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) (citing *Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 695-96 (11th Cir. 2014)).

*Id.* Relevant to the present motion, the Agreement contained an arbitration agreement, which required that "[a]ny dispute, controversy or claim arising out of or related to this Agreement or any breach or termination of this Agreement . . . shall be submitted to and decided by binding arbitration." *Id.* at 15.

On March 7, 2023, T&M alleges that it "reached out to Express to confirm whether the ERTC application was still moving forward" and that an Express representative replied that "Express could 'get the ERTC forms filed on [T&M's] behalf immediately.'" Dkt. 13 ¶¶ 13–14. T&M claims that Express failed to provide it with "a computation of ERTC credits, completed 941-X forms,[2] or any other work product[.]" *Id.* ¶ 15. Express reportedly did not respond to T&M's attempts to contact it on April 11, May 4, and July 7, 2023. *Id.* ¶ 16. T&M sought to express its personal "understanding that T&M's agreement with Express was 'dead' because Express failed to perform under the Agreement." *Id.* ¶¶ 16–17. "With IRS filing deadlines approaching," T&M asserts that it was forced to retain non-party E. J. Saad Law Firm ("Saad") as a replacement "to assist with preparation and filing of the amended returns." *Id.* ¶ 18. T&M reports that Saad subsequently prepared T&M's forms and filed them on August 22, 2023, *id.* ¶ 19, and that T&M paid Saad a certain percentage of the ERTCs it received. *Id.* ¶ 21.

[2] 941-X forms are amended Employee tax forms. Dkt. 13 ¶ 5.

"On June 28, 2024, over a year after their last correspondence with T&M, and two months after the IRS filing deadline for amending 2020 employer tax forms," T&M claims that "Express left a voice message for T&M, requesting a call back to 'review some information.'" *Id.* ¶ 22. According to T&M, "Express sent T&M another Client Engagement Agreement via email [on July 2, 2024], which was not executed." *Id.* ¶ 23. T&M then allegedly explained to Express representatives on several occasions "that their agreement had been terminated over a year before by T&M because of Express' inaction." *Id.* ¶ 24. T&M reports that it was during these conversations—estimated by T&M to be on or around July 2024—that "Express representatives informed T&M *for the first time* that Express had already filed 941-X forms for the second, third, and fourth quarters of 2020." *Id.* ¶ 25.

According to T&M's counterclaim, "the 941-X forms prepared by Express were filed on or around August 16, 2023, without authorization from T&M[,]" *id.* ¶ 27, but "were dated December 7, 2022, prior to the execution of IRS Form 2948 (Power of Attorney) authorizing work on behalf of T&M, and before information necessary to accurately assess tax credit entitlement and prepare amended returns had been provided by T&M to Express." *Id.* ¶ 26. Furthermore, T&M claims that "Express did not present the completed 941-X forms to T&M for review or approval prior to filing[,]" *id.* ¶ 28, and that "Express did not notify T&M that it filed amended tax returns on [the latter's] behalf." *Id.* ¶ 29. T&M concludes that Express's failure

to provide T&M with any computation of credits or completed 941-X forms meant that T&M was not granted the option to choose a payment method. *Id.* ¶ 30. Express ultimately chose the highest fee percentage of 30% of T&M's received ERTCs. *Id.* ¶ 31. Finally, Express states that, on August 26, 2025, it sent T&M an invoice for its services and that later sent subsequent invoices. Dkt. 1-2 ¶¶ 15–16.

Express initiated the instant action on March 2, 2026, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. Dkt. 1 ¶ 2. Express raises three claims: breach of contract (Count I), unjust enrichment (Count II), and breach of implied covenant of good faith and fair dealing (Count III). Dkt. 1-2 at 4–6. On April 17, 2026, T&M filed a notice to remove the case to this Court. Dkt. 1 at 1. T&M then filed its Answer to Express's complaint and brought two counterclaims against Express: breach of contract (Counterclaim I) and breach of the implied covenant of good faith and fair dealing (Counterclaim II). Dkt. 13 at 13–14.

## DISCUSSION

Counter-Defendant Express moves to dismiss Counter-Claimant T&M's counterclaims for failing to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and, in the alternative, Express moves to compel arbitration under the Federal Arbitration Act ("FAA"). Dkt. 19 at 1. For the reasons stated below, the Court denies Express' motion.

## I. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that the plaintiff give "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief . . . to give the defendant fair notice" of the claims and their grounds. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). The plaintiff's allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* (citation omitted). Importantly, courts must "accept the complaint['s] allegations as true" and consider the facts in the light most favorable to the plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).

Express argues that "T&M's counterclaim must be dismissed with prejudice as it has failed to and cannot allege any damages relevant to the alleged breach of contract and breach of implied covenant of good faith and fair dealing." Dkt. 19 at 2. "For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citation modified); *see Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1329 (11th Cir. 2012) (holding that a plaintiff may pursue a claim for breach of the

implied covenant of good faith and fair dealing only in connection with a viable breach of contract claim based on an express contractual duty (citing *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005))).

Here, the only issue before the Court as to breach is whether T&M sufficiently alleged damages. *See* Dkt. 19 at 7–8. Express argues that T&M's counterclaims should be dismissed because "[n]ot once has T&M alleged a specific dollar amount, a factual nexus between Express's alleged breach and the alleged damages, or that it paid Express anything." *Id.* at 7. The Court disagrees.

To properly plead damages for a breach of contract claim, a plaintiff must merely provide more than "conclusory and non-descript allegations," showing that "damages resulted from the breach." *Brooks v. Ampcus, Inc.*, Case No: 6:23-cv-1756, 2023 WL 9104786, at *3 (M.D. Fla. Nov. 20, 2023) (emphasis omitted) (quoting *Resnick*, 693 F.3d at 1325). To satisfy notice pleading requirements, "allegations as to [financial] loss are not required to be specific or possess a very high degree of certainty. A general allegation of the damages sustained[,] which are the direct natural and necessary result of [an] injury[,] seems to be sufficient upon the theory that the defendant is presumed to know the damages that directly and necessarily result from the [breach] and consequently will not be taken by surprise when evidence of such damage is admitted." *Seaboard Air Line Ry. Co. v. Hess*, 73 Fla. 494, 501 (1917) (citations omitted); *see Siever v. BWGaskets*, 669 F. Supp. 2d 1286,

1300 (M.D. Fla. 2009) ("A party injured by [a] breach of contract is entitled to recover those damages that 'naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered.'" (quoting *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So.2d 1278, 1280 (Fla. 5th DCA 2002))); *see also Arch Ins. Co. v. A3 Dev.*, LLC, No. 23-CV-23524, 2025 WL 1504176, at *11–12 (S.D. Fla. May 27, 2025) ("Plaintiff's damages allegations need not be specific and must simply establish that Plaintiff incurred a pecuniary injury that flows from the contract." (citing *Siever*, 669 F. Supp. 2d at 1300)).

Here, T&M alleges that it incurred certain pecuniary costs. *See* Dkt. 13 ¶ 37. Specifically, T&M claims that it suffered the following damages: "[a]dditional costs and expenses, including higher fee rates, incurred by retaining Saad to perform the work Express failed to do"; "[i]ncreased costs in the form of 5–15% higher fee rates unilaterally chosen by Express"; "[i]ncreased costs in the form of redundant and compound fees charged by both Express and Saad for the same benefit"; and "[a]ttorney's fees and costs of suit." *Id.* Taken as true, the Court finds that T&M's allegations sufficiently claim damages that "naturally flow from the breach." *Siever*, 669 F. Supp. 2d at 1300 (quoting *Mnemonics*, 808 So.2d at 1280). Accordingly, Express' motion to dismiss T&M's counterclaims is due to be denied.

## II. Motion to Compel Arbitration[3]

"When a party who has agreed to arbitrate a dispute instead brings a lawsuit, the Federal Arbitration Act (FAA) entitles the defendant to file an application to stay the litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 413 (2022). Although "a court must hold a party to its arbitration contract just as the court would to any other kind," *id.* at 418, the right to arbitration—also like any other contractual right—can be waived. *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1235 (11th Cir. 2018) (citation omitted). In determining whether a party has waived its arbitration rights, the Court considers whether, "under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Id.* at 1236 (citation omitted). "A key factor in deciding this is whether a party has 'substantially invoked the litigation machinery prior to demanding arbitration.'" *Id.* (quoting *S & H Contractors v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990), *abrogated on other grounds by Morgan*, 596 U.S. at 416) (citation modified).

Here, Express initiated this action by filing its initial complaint against T&M in state court without any mention of the Agreement's arbitration clause or its intent

[3] Express's exact demand is unclear. Throughout its motion and within its supplemental briefing, Express either implicitly or explicitly asks the Court to compel arbitration for the entire action. *See* Dkt. 19 at 8 ("If this Court finds that the dispute is arbitrable[,] . . . this Court must stay the proceedings pending arbitration . . . [and] compel arbitration[.]"); Dkt. 22 at 3 (asserting that "[t]he entire action should proceed to arbitration," that "both sides' claims fall within [the Arbitration clause]," and that the Court should "stay this case pending arbitration"). However, in its motion's first paragraph, Express claims only that "the *counterclaim* is barred by the binding arbitration clause contained in the parties' written Client Engagement Agreement." Dkt. 19 at 1 (emphasis added). Given these inconsistencies and the frequency of Express's request to compel arbitration on the entire action, the Court construes Express's position to be that the Court should compel arbitration on the action as a whole.

to invoke it. Dkt. 1-1 at 2–6. Express then amended the complaint without mentioning the arbitration clause. *See id.*; Dkt. 1-2 at 2–6. After T&M's removal to federal court, Express failed to file any amendments or notices expressing its intent to pursue arbitration, and it made its desire to do so known only after T&M initiated its counterclaims, three months after Express' initial complaint. *See* Dkt. 19 at 1–9. For this reason, the Court finds that Express has "substantially invoked the litigation machinery prior to demanding arbitration[,]" *Gutierrez*, 889 F.3d at 1236 (quoting *S & H Contractors*, 906 F.2d at 1514) (citation modified), and thus waived arbitration for this action. *Compare Am. Sugar Ref. Co. v. The Anaconda*, 138 F.2d 765, 767 (5th Cir. 1943),[4] *aff'd*, 322 U.S. 42 (1944) (holding that a plaintiff waived its right to arbitration "in electing to sue without adverting to or declaring on the arbitration agreement"), *and E. C. Ernst, Inc. v. City of Tallahassee*, 527 F. Supp. 1141, 1142 (N.D. Fla. 1981) (holding that "filing a lawsuit to enforce a contract usually amounts to a waiver by the plaintiff of its right to arbitration"), *with Falvo v. Atl. Specialty Ins. Co.*, No. 8:24-CV-01412-WFJ-AEP, 2025 WL 278022, at *4 (M.D. Fla. Jan. 23, 2025) (finding that a plaintiff did not waive its right to arbitrate when it demanded arbitration before filing suit, sought only equitable relief to enforce its asserted right to arbitrate after the demand was denied, and consistently maintained its arbitration

[4] Decisions by the former Fifth Circuit handed down before October 1, 1981, are binding on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

right despite answering a counterclaim). Accordingly, Express's motion to compel arbitration is denied.

**CONCLUSION**

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Plaintiff and Counter-Defendant ERTC Express, LLC's Motion to Dismiss or Alternatively to Compel Arbitration, Dkt. 19, is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, on July 21, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**Copies Provided To**
Counsels of Record